IN THE MATTER OF THE APPLICATION OF
PLAYBOY–ELSINORE ASSOCIATES FOR A
CASINO LICENSE.

Superior Court of New Jersey
Appellate Division

Argued March 12, 1985—Decided August 6, 1985.

Before Judges PRESSLER, BRODY and COHEN.

*David M. Satz, Jr.* argued the cause for appellant Playboy-Elsinore Associates (*Saiber, Schlesinger, Satz & Goldstein,* attorneys; *Marilu Marshall,* admitted *pro hac vice,* and *Mr. Satz,* of counsel; *Henry S. Friedman,* on the brief).

*Thomas N. Auriemma* argued the cause for respondent Casino Control Commission (*Robert J. Genatt*, General Counsel, attorney).

The opinion of the court was delivered by

COHEN, J.A.D.

Elsinore Shore Associates (ESA) is a New Jersey partnership.[1] It owns and operates a casino hotel in Atlantic City, known as Elsinore Atlantis, which opened in 1981 under the authority of a temporary casino permit issued by the Casino Control Commission. *N.J.S.A.* 5:12–95.1 *et seq.* (repealed). In April 1982, the Commission issued it an annual casino license, *N.J.S.A.* 5:12–87, and renewed it in April 1983, *N.J.S.A.* 5:12–88. In March 1984, the Commission heard ESA's application for renewal and granted it, effective April 14, 1984.

Like its predecessors, the resolution granting the application contained a number of conditions. One of them, # 135, read as follows:

> That the Licensee continue its support for and make a meaningful contribution by November 14, 1984 to the construction training program administered by Atlantic Community College designed to improve minority and female participation in the Atlantic County construction workforce.

Another of the conditions, # 142, read as follows:

> That to ensure the independence of the Licensee's internal audit and surveillance departments pursuant to *N.J.A.C.* 19:45–1.11(c), both the Director of Internal Audit and the Director of Surveillance shall report directly to Elsinore Corporation's Board of Director's Audit Committee and that appropriate documentation defining the authority and responsibility of these two departments be provided to the Commission.

On appeal to this court, ESA challenges both of these conditions on the grounds that they are unauthorized by statute or regulation and are arbitrary and unlawful. We agree that Condition # 135 is improper and order it set aside. We disagree

---

[1] Its name was changed after the relevant events from Playboy-Elsinore Associates.

with ESA, however, on Condition # 142, and confirm its validity.

Condition # 142 arose out of ESA's unusual business organization. When formed in 1979, ESA was a partnership of Playboy of Atlantic City, also a partnership, and Elsub Corporation, a subsidiary of Elsinore Corporation, which is publicly owned. In 1984, Elsub bought most of the interest of ESA owned by Playboy of Atlantic City, as a result of which Elsub now owns 91.5% of ESA. ESA, as a partnership, has no board of directors, but only a two-person executive committee, consisting of the president and vice president of Elsub and Elsinore.[2]

█ Part of the Commission's statutory responsibilities is to see to it that a system of internal controls is established by each casino. *N.J.S.A.* 5:12–99. The Commission adopted *N.J. A.C.* 19:45–1.11 to create standards for those controls. The various operations of a casino are to be divided into at least seven departments: surveillance, internal audit, casino, slot, credit, security and casino accounting. The regulation provides that the surveillance and internal audit departments should
> ... report directly to the Board of Directors, or its audit committee or equivalent regarding matters of policy, purpose, responsibilities and authority.... [*N.J.A.C.* 19:45–1.11(C)(1) and 19:45–1.11(C)(3).]

The idea is to establish lines of reporting that will guarantee independence of the various departments from one another, independence for the more sensitive functions from operating management and clear responsibility at the highest level for internal audit and surveillance responsibilities.

If ESA's surveillance and internal audit departments reported to its two-person executive committee, the result would frustrate the Commission's valid goal of assigning and insulating

---

[2]Pursuant to *N.J.S.A.* 5:12–82(b)(4) and *N.J.A.C.* 19:41–3.1(a)(3), the Commission did not issue ESA's license until being satisfied of the qualifications of Elsub, Elsinore and a number of individuals involved in the ownership and management of the corporations.

responsibility, institutionalizing oversight over operating management and creating checks and balances within the casino operation. Therefore, it required the two departments to report directly to the audit committee of the board of directors of the publicly traded parent, Elsinore. ESA complains here, as it did to the Commission, that the regulation does not permit the Commission to impose responsibilities on the directors of unregulated parent corporations and that imposing surveillance and internal audit responsibilities on Elsinore's corporate directors is burdensome, inconvenient and unnecessary. We disagree.

 We will not rehearse the sound and frequently repeated reasons for the detailed, intensive and pervasive regulation of casino operations in New Jersey. *See Knight v. Margate,* 86 *N.J.* 374 (1981); *Bally Mfg. Corp. v. N.J. Casino Control Comm'n.,* 85 *N.J.* 325 app. dism. 454 *U.S.* 804, 102 *S.Ct.* 77, 70 *L.Ed.*2d 74 (1981). It is a legitimate part of the regulatory fabric to require corporate structures that will create highest level responsibility and independence from operating management for such sensitive casino functions as surveillance and internal audit. A publicly traded company can not isolate itself from responsibility by operating a casino through a subsidiary corporation and a partnership with only two managers. Faced with such an operation, the Commission has sufficient flexibility under *N.J.A.C.* 19:45–1.11 to impose the kind of responsibilities on the parent corporation that are involved here. *See N.J.S.A.* 5:12–70; 5:12–80; *In re Boardwalk Regency Corp. Casino License,* 90 *N.J.* 361, app. dism. 459 *U.S.* 1081, 103 *S.Ct.* 562, 74 *L.Ed.*2d 927 (1982). *Cf. N.J.S.A.* 5:12–82(c)(3).

 It is of no consequence that the operations of the license applicant may be relatively free of violations. The Commission's reasonable role includes requiring business structures that will keep them that way. It does not matter that the parent's board of directors is not prepared to undertake the

responsibilities which the Commission imposed on it. The Commission's response to its legitimate concerns is a reasonable one, and the board of directors will have to accommodate to it. The Commission need not accept the relationship between the casino licensee and its parent, if, as here, alteration is necessary to meet significant regulatory interests. Condition # 142 will stand.

Condition # 135, however, is invalid. It arises out of the statutory duty of every applicant to provide equal employment opportunities in the construction and renovation of casino and hotel premises. *N.J.S.A.* 5:12–134; 5:12–135. We were advised at oral argument that every casino has been unable to meet its obligations in that regard, that the reason was the small number of minority workers available in the construction industry and that the casinos were all required to make a "meaningful contribution" to the construction training program administered by the Atlantic County College.

■ We have no difficulty with the Commission's general approach. Where compliance with statutory employment standards is blocked by unavailability of minority workers, it is reasonable to require casino contributions to a program designed to create a pool of qualified minority workers. One of ESA's objections to Condition # 135 is that it appears to be a penalty for noncompliance imposed without a hearing. That objection is dissipated by recognizing that the requirement is imposed on all casinos, not as a penalty but as a reasonable substitute for compliance.

■ ESA's other objections, however, are well founded. The first is addressed to the vagueness of the phrase "meaningful contribution." It is impossible to tell how or by whom "meaningfulness" is intended to be measured. Without a standard, the condition is subject to arbitrary and inconsistent enforcement. Behind the quoted phrase is a quantitative thought which deserves expression. As it is now worded, Condition # 135 is too vague to enforce and must be invalidated.

ESA's other valid objection is that Condition #135 is a *de facto* rule because it is imposed as a matter of policy on all casinos. Since the condition is imposed on the entire industry according to some yet unspoken standard and meets, generally, the test of *Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 334–335 (1984), it is a subject which can be dealt with only by the rulemaking power. Thus Condition #135 is invalid.

The imposition of Condition #135 is set aside. The imposition of Condition #142 is confirmed as valid.